IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| HP HOLDING LLC *et al.*, | |
| Plaintiffs, | |
| | Civil No. 23-20907 (RBK/MJS) |
| v. | |
| | **OPINION** |
| RED ROOF INNS, INC. *et al.*, | |
| Defendants. | |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court upon several pending motions: (1) Defendants' Motion to Dismiss Plaintiffs' Complaint with Prejudice Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "First Motion to Dismiss" or "First Mot.") (ECF No. 5); (2) Defendants' Motion to Dismiss Plaintiffs' Amended Complaint with Prejudice Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Second Motion to Dismiss" or "Second Mot.") (ECF No. 12); and (3) Plaintiffs' Motion for Leave to File a Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 15 ("Plaintiffs' Motion to Amend" or "Pls.' Mot. Amend") (ECF No. 16).

For the reasons set forth below, Defendants' First Motion to Dismiss (ECF No. 5) is **DENIED as moot**; Defendants' Second Motion to Dismiss (ECF No. 12) is **GRANTED**; and Plaintiffs' Motion to Amend (ECF No. 16) is **DENIED**.

A.   **Factual Background**

Plaintiffs HP Holding LLC ("Holding") and HP Hospitality LLC ("Hospitality") are owners and operators of a hotel franchise located in Absecon, New Jersey. (Am. Compl. ¶¶ 10,

15, 18).[1] They bring various claims against Defendants Red Roof Inns, Inc. ("RRI") and Red Roof Franchising LLC ("RRF"), who are the parent company and franchisor, respectively, of Plaintiffs' hotel. (*Id.* ¶¶ 62–105).

In or about 2015, Plaintiff Holding became the owner and operator of the hotel, which was operating as a Red Roof Inn (the "Inn"). (*Id.* ¶¶ 13–15). Plaintiff Holding had no revenues other than those fees paid by guests at the Inn and was dependent upon revenues from the Inn to pay necessary expenses, including taxes and insurance. (*Id.* ¶¶ 16–17). In order to continue operating the Inn, Plaintiff Holding alleges that Defendant RRI required it to form a separate entity—Plaintiff Hospitality—which would then enter into a new franchising agreement (the "Franchise Agreement") with Defendant RRI's affiliate and subsidiary, Defendant RRF. (*Id.* ¶ 18). The Franchise Agreement was a "boilerplate" agreement prepared by Defendants RRI and RRF, and Plaintiffs Holding and Hospitality allege that they did not have "any material input into the language of the Franchise Agreement or opportunity to alter its terms." (*Id.* ¶ 19). Plaintiff Holding, specifically, alleges that it did not believe it had any alternative other than to accept Defendant RRI's direction to form the entity of Plaintiff Hospitality and enter into the Franchise Agreement. (*Id.* ¶ 20). Despite the establishment of Plaintiff Hospitality, Plaintiff Holding remained the owner of the Inn and its surrounding real property. (*Id.* ¶ 21).

As a result of its location near the beachfront resort area of the New Jersey shore, occupancy of the Inn was greatest between the months of May and September and sparse during the remainder of the year. (*Id.* ¶ 29). Guests typically booked rooms at the Inn using a variety of online booking services, each of which obtained information about room availability by

---

[1] The sole members of Plaintiffs Holding and Hospitality are Allison and Fred Doumani, both of whom reside in Las Vegas, Nevada. (Am. Compl. ¶¶ 2, 4).

2

accessing Defendant RRI's reservation system (the "Reservation System"). (*Id.* ¶¶ 30–31). In order to utilize the Reservation System, Plaintiff Holding installed and maintained "all terminals and ancillary equipment and software" that was required by Defendant RRI. (*Id.* ¶ 33). Use of the Reservation System was also mandated as part of the Franchise Agreement between Plaintiff Hospitality and Defendant RRF. (*Id.* ¶ 34).

Prior to Plaintiff Holding's acquisition of the Inn, Defendant RRI required the prior operating tenant of the Inn (the "Subtenant") to institute certain changes and improvements for continued operations, including an increase of nightly rates, replacement of lobby furniture, installation of window covers, and placement of lobby signage. (*Id.* ¶¶ 12, 25). Once Plaintiff Holding assumed control of the Inn, it undertook and completed all requested improvements to the Inn "in all material respects" and "incurring considerable costs" in the process so that operations could continue during the busy summer months. (*Id.* ¶ 27). Despite these efforts, Defendant RRI refused to allow the Plaintiffs to utilize the Reservation System until all renovations had been completed. (*Id.* ¶ 35). Beyond simply denying access to the system, Plaintiffs allege, the Reservation System indicated that the Inn's rooms were "fully booked" and that callers to the toll-free number for the system were also advised that the Inn was "fully booked." (*Id.* ¶ 36). As a result, the online services upon which both Plaintiffs relied to coordinate bookings at the Inn indicated that the Inn was "Sold Out," resulting in the rejection of potential guests' efforts to book rooms. (*Id.* ¶ 37).

Defendant RRI eventually restored access to the Reservation System, but the restoration was "only temporary." (*Id.* ¶ 40). In or about Spring 2017, the manager of the Inn retired. (*Id.* ¶ 41). Following the manager's retirement, Defendant RRI stated that the Inn would again be removed from the Reservation System until a new manager was hired and completed a two-week

3

training course at Defendant RRI's corporate headquarters in Ohio. (*Id.* ¶ 42). Although a new manager was soon hired, Defendant RRI declined to restore access to the Reservation System until the new manager received training. (*Id.* ¶ 45). In order to expedite the restoration of their access to the Reservation System, Plaintiffs agreed to send the new manager to the two-week training program, incurring "substantial expenses" as a result. (*Id.* ¶¶ 47–48). Plaintiffs' access to the Reservation System remained blocked during the training period. (*Id.* ¶ 49).

Approximately two weeks after returning from the training program, on the July 4 holiday weekend and at the height of the Inn's busy season, the new manager abruptly quit her role and declined to respond to Plaintiffs' communications. (*Id.* ¶ 50). Plaintiff subsequently learned that the new manager had been recruited by Defendant RRI to leave her position at the Inn and accept a managerial position at a Red Roof Inn located in Galveston, Texas. (*Id.* ¶ 51). Following the new manager's departure, Plaintiffs were once again prevented from accessing the Reservation System and the online booking entities again listed the Inn as "Sold Out." (*Id.* ¶¶ 52–53). Consequently, potential visitors were unable to book rooms for the Inn through the online booking entities and Plaintiffs suffered "catastrophic losses" as a result. (*Id.* ¶ 54). Upon learning of the new manager's departure for another Red Roof Inn, Defendant RRI's Regional Manager admitted that Defendant RRI shouldn't have "stolen" the new manager. (*Id.* ¶ 55). Despite this admission, Plaintiffs continued to be prevented from accessing the Reservation System, thereby compounding their losses at the Inn. (*Id.* ¶¶ 56, 59). Additionally, Defendants continued to insist that Plaintiff Hospitality pay all franchising fees and agreements, regardless of their inability to attract online bookings. (*Id.* ¶ 57).

As a result, Plaintiffs claim that Defendants "engaged in a concerted and continuous effort to interfere with and undermine Plaintiffs' business," including by denying access to the Reservation System and by inducing the new manager to accept employment at a different Red Roof Inn. (*Id.* ¶ 60). Plaintiffs further claim that they suffered "substantial damages," including "lost revenues and damage to their reputation and standing" with the online booking entities and potential guests as a direct result of Defendants' conduct. (*Id.* ¶ 61).

### B. Procedural History

Plaintiffs filed their initial Complaint on October 5, 2023. (ECF No. 1, Compl.). Defendants filed their First Motion to Dismiss on November 21, 2023. (ECF No. 5, First Mot.). On December 12, 2023, Plaintiffs filed an Amended Complaint. (ECF No. 8, Am. Compl.). On January 9, 2024, Defendants filed a Second Motion to Dismiss. (ECF No. 12, Second Mot.). On February 6, 2024, Plaintiffs filed a memorandum in opposition to the Second Motion to Dismiss. (ECF No. 15, Opp'n Mem.). On February 7, 2024, Plaintiffs filed a Motion to Amend. (ECF No. 16, Pls.' Mot. Amend). On February 26, 2024, Defendants filed a reply brief in support of their Second Motion to Dismiss. (ECF No. 19, Reply Br.). The pending motions are fully briefed and ripe for the Court's review.

## II. JURISDICTION

This Court has subject-matter jurisdiction pursuant to the federal diversity statute. *See* 28 U.S.C. § 1332(a). Plaintiff sufficiently alleges jurisdiction under § 1332(a) by claiming complete diversity of citizenship between the parties and an amount in controversy exceeding $75,000. (Am. Compl. ¶ 8). Plaintiffs are citizens of New Jersey and Nevada, and Defendants are

citizens of Delaware and Ohio.[2] (*Id.* ¶¶ 1–6). The parties do not contest citizenship, personal jurisdiction, or the amount in controversy. Because we find that Plaintiffs have met § 1332(a)'s complete diversity and amount-in-controversy requirements, the Court has subject-matter jurisdiction to hear this dispute.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not

---

[2] Defendant RRF, which is a limited liability company, has not yet disclosed the citizenships of its constituent members. *See Lincoln Ben. LifeCo. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (holding that the citizenship of an LLC is determined by the citizenship of each of its members). However, we find Plaintiffs' uncontested averment "upon information and belief" that "no member of RRF resides within the State of New Jersey," (Am. Compl. ¶ 7), to be sufficient for invoking this Court's jurisdiction at the pleading stage.

suffice. *Id.* (quoting *Iqbal*, 556 U.S. at 678). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## IV. DISCUSSION

There are three pending motions before the Court: Defendants' First and Second Motions to Dismiss, (ECF Nos. 5, 12); and Plaintiffs' Motion to Amend, (ECF No. 16). We address each motion in turn.

### A. Defendants' First Motion to Dismiss

When a plaintiff files a complaint and, later in the litigation, an amended complaint, "[a]n amended complaint supersedes the original version." *Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2002). Accordingly, a district court may deny as moot a defendant's motion to dismiss where the complaint at issue has been supplanted by the filing of a subsequent amended complaint. *See, e.g.*, *Fish Kiss LLC v. N. Star Creations, LLC*, Civ. No. 17-8193, 2018 WL 3831335, at *13 (D.N.J. Aug. 13, 2018) ("Because the Complaint at which the First Motion to Dismiss was directed has now been supplanted by two subsequent Amended Complaints, the Court will deny the First Motion to Dismiss as moot.").

Plaintiffs' Amended Complaint (ECF No. 8) is the operative complaint in this matter. *See Snyder*, 303 F.3d at 276. Because Plaintiffs filed their Amended Complaint after Defendants filed their First Motion to Dismiss (ECF No. 5), we deny Defendants' First Motion to Dismiss as moot, *see Fish Kiss LLC*, 2018 WL 3831335, at *13, and instead focus our attention on Defendants' Second Motion to Dismiss (ECF No. 12).

### B.      Defendants' Second Motion to Dismiss

As a preliminary matter, the Court recognizes that Plaintiffs did not include a copy of the Franchise Agreement—which is repeatedly referenced in the Amended Complaint—as an exhibit to that filing. Instead, it was appended as an exhibit to Defendants' Second Motion to Dismiss. *See* (Second Mot., Ex. A "Franchise Agreement").

"[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 372 (D.N.J. 2019) (noting that "a court may consider documents that are integral to or explicitly relied upon in the complaint or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document") (cleaned up); *AV Design Servs., LLC. v. Durant*, Civ No. 19-8688, 2021 WL 1186842, at *5 (D.N.J. Mar. 30, 2021) ("We will also consider the Operating Agreement, which is attached to Plaintiffs' motion to dismiss, because Defendant's claim that he is a member of the LLC depends on the contents of the Operating Agreement.").

Accordingly, because Plaintiffs do not contest the authenticity of Defendants' copy of the Franchise Agreement and rely explicitly on the language contained therein, *see, e.g.*, (Am. Compl. ¶¶ 18–19), we incorporate that version of the document into our review.

#### *i.*      *Choice of Law*

"New Jersey gives effect to contracting parties' private choice of law clauses unless they conflict with New Jersey public policy." *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 331 n.21 (3d Cir. 2001) (citing *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)).

The Franchise Agreement designates Ohio law to govern all claims "arising under" or "in relation to" the Agreement or the relationships between the parties. (Franchise Agreement ¶ 17.5). New Jersey courts, however, have consistently applied the law of the state in which a franchisee has its principal place of business, notwithstanding a contractual choice-of-law provision. *See, e.g.*, *King v. GNC Franchising, Inc.*, Civ. No. 04-5125, 2007 WL 1521253, at *2 (D.N.J. May 23, 2007) (applying New Jersey law because the defendant franchisee businesses were principally located there) (citing *Instructional Sys., Inc.*, 614 A.2d at 135). As the New Jersey Supreme Court has stated:

> New Jersey has a strong policy in favor of protecting its franchisees. In this case, New Jersey has significant "contacts" with the transaction. The franchisee is located here and the majority of [the plaintiff's] employees reside in New Jersey . . . . New Jersey would undoubtedly be the state of applicable law had no choice-of-law provision existed.

*Instructional Sys., Inc.*, 614 A.2d at 135. The court ultimately applied New Jersey law, finding that "New Jersey had the overriding interest in the fair treatment of its franchisee." *Id.*

The same logic applies in this case. Plaintiffs' claims consist of common-law claims for tortious interference and breach of contract, as well as a claim under the New Jersey Franchise Practices Act ("NJFPA"). Each claim centers on a dispute over a franchising agreement concerning a hotel located in New Jersey.[3] As the home state of the franchisee Plaintiffs' principal place of business, New Jersey therefore has a significant interest in the parties'

---

[3] The parties disagree whether Plaintiff Holding can be considered a "franchisee." *See* (Mot. 19–20). The NJFPA defines a "franchisee" as "a person to whom a franchise is offered or granted." N.J. Stat. Ann. §56:10-3(d). Courts have struggled to apply this capacious definition. *See Instructional Sys., Inc.*, 614 A.2d at 131 (canvassing various definitions). Here, parsing the definitions of "franchisee" and "franchisor" as applied to Plaintiffs Holding and Hospitality and Defendants RRI and RRF requires further discovery to determine the exact nature of the parties' corporate identities and scope of their respective liabilities. As such, at this early stage we consider Plaintiffs Holdings and Hospitality to be "franchisees" and Defendants RRI and RRF to be "franchisors" for purposes of resolving the NJFPA claim. *See* Part IV(B)(iv), *infra*.

9

Franchise Agreement regarding the Inn. In this way, the state's "strong policy in favor of protecting its franchisees," *id.*, militates in favor of applying New Jersey law to each of Plaintiffs' claims. Moreover, as a Court sitting in diversity, we would otherwise be compelled to apply the substantive law of the forum state. *See SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). For these reasons, we apply the law of New Jersey to each of Plaintiffs' claims.[4]

### ii.    *Counts I–II: Tortious Interference*

Counts I and II encompass Plaintiffs' claims for tortious interference. The first claim is brought by Plaintiff Holding and centers on Defendant RRI's alleged interference with Plaintiff Holding's business relationships surrounding the Inn, the new manager, and potential guests via the Reservation System. (Am. Compl. ¶ 70). The second claim is brought by Plaintiff Hospitality and centers on Defendant RRI's alleged interference with the Franchise Agreement. (*Id.* ¶ 82).

To state a claim for tortious interference with prospective advantage under New Jersey law, a plaintiff must allege:

---

[4] For choice-of-law purposes, we are satisfied that New Jersey public policy favors applying the law of a franchisee's home state notwithstanding a contractual provision to the contrary. *See Instructional Sys., Inc.*, 614 A.2d at 135; *Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc.*, 680 A.2d 618, 626 (N.J. 1996) (holding that forum-selection clauses in contracts subject to the NJFPA "are presumptively invalid because they fundamentally conflict with the basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors"). We are also satisfied that applying New Jersey law to each of Plaintiffs' claims surrounding the franchise relationship at issue—under both the common law and the NJFPA—would most closely align with the legislature's intent in passing the NJFPA. *See* Franchise Practices Act: Hearing on A. 2063 Before the Assembly Judiciary Comm., 194th Leg., 2d Sess. 136 (1971) (Statement of Charles W. Davis, Executive Vice-President New Jersey Hotel/Motel Ass'n) ("This bill gives neither the franchisor nor franchisee the upper hand. What it does, however, is to prevent arbitrary or capricious actions by the franchisor who generally has vastly greater economic power than the franchisee."); *see also* Thomas M. Pitegoff, *Choice of Law in Franchise Agreements,* 9 *Franchise Law Journal* 15, 19 (1989) ("Most courts . . . have held that the parties to a franchise agreement cannot avoid the franchise law of the state in which the franchisee is located by providing in their agreement that the laws of another state will govern.").

> (1) [his] reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference.

*DeGennaro v. Am. Bankers Ins. Co. of Fla.*, 737 F. App'x 631, 637 (3d Cir. 2018) (citing *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989)).

Under New Jersey law, the statute of limitations for tortious interference is six years. N.J. Stat. Ann. § 2A:14-1; *see also Devine v. LyondellBasell Indus., N.V.*, Civ. No. 15-8406, 2016 WL 5934705, at *3 (D.N.J. Oct. 12, 2016). This limitations period applies to Plaintiff Holding's claim of tortious interference because it arises from general interference with the Reservation System and the relocation of the new manager, and because neither was explicitly a party to the Franchise Agreement.

By contrast, Plaintiff Hospitality and Defendant RRF, as parties to the Franchise Agreement, contracted to a different limitations period. In the Franchise Agreement, the parties agreed that "[a]ny and all claims arising out of or relating to this Franchise Agreement, the relationship of [RRF] and [Hospitality], or [Hospitality's] operation of the Inn . . . shall be commenced within three (3) years from the occurrence of the facts giving rise to such claim or action." (Franchise Agreement § 17.8.2). In New Jersey, contract limitations periods are enforceable. *Klimowicz v. Unum Life Ins. Co. of Am.*, 296 F. App'x 248, 250 (3d Cir. 2008) ("Parties may . . . contract for a shorter limitation period, as long as the contractual period is not manifestly unreasonable.") (citing *Hosp. Support Servs., Ltd. v. Kemper Group, Inc.*, 889 F.2d 1311, 1314 (3d Cir. 1989)). The contractual limitations period applies to Plaintiff Hospitality's claim of tortious interference because it "arises out of" the Franchise Agreement, to which Plaintiff Hospitality was a party. *See* (Franchise Agreement § 17.8.2).

11

Plaintiffs' Amended Complaint does not clearly allege wrongdoing beyond July 2017. *See* (Am. Compl. ¶ 50). Plaintiffs contend in their brief opposing the Second Motion to Dismiss, however, that the alleged wrongdoing occurred through at least April 30, 2018, the date that Defendant RRF terminated the Franchise Agreement. (Opp'n Mem. 23). Because this fact was not alleged in the Amended Complaint itself, however, we cannot integrate it into our review. *See Iqbal*, 556 U.S. at 679.

As discussed, Plaintiffs filed their initial Complaint on October 5, 2023—more than six years after the conduct was alleged to have occurred, according to the operative Amended Complaint. Because of this, each of Plaintiffs' tortious interference claims falls outside of the relevant limitations period, whether under New Jersey's six-year statute of limitations or the Franchise Agreement's three-year limitations period.

We recognize that Plaintiff Holding may seek to integrate into a future amended complaint the allegation that its injuries continued through the termination of the Franchise Agreement in April 2018, thereby bringing its tortious interference claim within New Jersey's six-year statute of limitations. For this reason, we dismiss Count I without prejudice. By contrast, because Plaintiff Hospitality's claim remains subject to the Franchise Agreement's three-year limitations provision, which we decline to find as manifestly unreasonable, *see Klimowicz*, 296 F. App'x at 250, we dismiss Count II with prejudice.

    *iii.*   *Count III: Breach of Contract*

Plaintiff Hospitality also brings a claim for breach of contract against Defendant RRF for allegedly violating the terms of the Franchise Agreement. Because the Franchise Agreement is subject to a three-year limitations period, this claim fails for the same reasons as Count II.

12

To state a breach-of-contract claim in New Jersey, a plaintiff must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002). The statute of limitations for a breach-of-contract claim in New Jersey is six years. N.J. Stat. Ann. § 2A:14-1. As discussed, however, parties may contract for a shorter limitations period, so long as the period is not manifestly unreasonable. *See Klimowicz*, 296 F. App'x at 250.

Plaintiffs allege that Defendant RRF interfered with the ability of Hospitality to comply with the Franchise Agreement by, among other things, obstructing the Inn's access to the Reservation System and by "knowingly and falsely provid[ing] that the Inn was 'fully booked'" during times that Defendant RRF knew this to be false. (Am. Compl. ¶¶ 89–90). However, because the Franchise Agreement is subject to a three-year limitations period, *see* (Franchise Agreement § 17.8.2), and because we have already found the Franchise Agreement's limitations provision not to be manifestly unreasonable, we find that Plaintiff Hospitality's breach-of-contract claim is time-barred. Accordingly, we dismiss Count III with prejudice.

    *iv.*  *Count IV: Violation of the NJFPA*

Plaintiffs Holding and Hospitality each bring claims under the NJFPA against Defendants RRI and RRF. *See* N.J. Stat. Ann. § 56:10 *et seq*. Specifically, Plaintiffs allege that Defendants wrongfully terminated the Franchise Agreement—both actually and constructively—in violation of the statute and that Defendant RRF failed to provide Hospitality with prior written notice of the termination. (Am. Compl. ¶¶ 98–101). Plaintiffs further allege that, as a result of Defendants' actions, they were unable to generate revenues from the Inn and were required to sell it, along with the surrounding property, at a "significant loss." (*Id.* ¶ 102).

Leaving undetermined at this stage whether both Plaintiff Holding and Hospitality may be considered "franchisees" under the NJFPA, *see* note 3, *supra*, the Court recognizes that the NJFPA expressly does not apply in all franchise contexts. Rather, the NJFPA's scope is limited, and it applies only:

> a) to a franchise (1) the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey, (2) where **gross sales of products or services between the franchisor and franchisee covered by such franchise shall have exceeded $35,000.00 for the 12 months next preceding the institution of suit pursuant to this act**, and (3) where more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise . . . .

N.J. Stat. Ann. § 56:10-4 (emphasis added).

Plaintiffs allege that the actions by Defendants RRI and RRF "prevented the Inn from generating revenues of **$25,000** for a protracted period, including the twelve months preceding this action." (Am. Compl. ¶ 103) (emphasis added). This allegation falls short of the $35,000 threshold required to state a claim under the NJFPA. Perhaps recognizing their error, Plaintiffs sought the Court's leave to file a Second Amended Complaint while Defendants' Motions to Dismiss remained pending, *see* Part IV(C), *infra*. Because Plaintiffs' Amended Complaint remains the operative complaint, however, Plaintiffs fail at this stage to meet the second element required to state a claim under the NJFPA. Accordingly, Plaintiffs' NJFPA claim fails. Like Count I, however, we dismiss Count IV without prejudice to provide Plaintiffs with a final opportunity to cure their defective pleadings.

### C.  Plaintiffs' Motion to Amend

Lastly, while the Defendants' Motions to Dismiss were still pending, Plaintiffs filed a "Cross Motion to Amend the Complaint Pursuant to Rule 15 of the Federal Rule of Civil Procedure," (Pls.' Mot. Amend), which the Court construes as a motion for leave to file a Second

Amended Complaint. The Court recognizes this as an attempt to cure various defects in the Amended Complaint that currently render several of Plaintiffs' claims outside the relevant statute of limitations periods or damage thresholds. *See, e.g.*, (*id.* ¶¶ 94–108 (displaying the relevant "Track Changes" edits on a redlined copy of the proposed Second Amended Complaint)).

Federal Rule of Civil Procedure 15(a)(2) permits a party to amend its pleading at any point prior to trial "only with the opposing party's written consent or the court's leave." Leave should be freely granted "when justice so requires." *Id.* This directive encompasses a broad range of equitable factors. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006). The court must consider whether the delay in seeking amendment is undue, motivated by bad faith, or prejudicial, or if the amendment would ultimately be futile. *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). Absent one of the factors, leave to amend should be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The decision to grant leave is within the court's discretion. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330 (1971).

The unorthodox timing of Plaintiffs' Motion gives the Court pause. Each of Defendants' Motions to Dismiss remained pending at the time Plaintiffs sought leave to file a Second Amended Complaint. In this way, Plaintiff seeks yet another revision of its pleadings before the Court has had an opportunity to address Defendants' claims. Plaintiff has already delayed the Court's review once before by filing an Amended Complaint as of right in response to Defendants' First Motion to Dismiss (and thereby mooting it, as discussed above). As such, in order to avoid piecemeal litigation and finally address Defendants' pending motions, the Court exercises its discretion under Rule 15(a)(2) to deny Plaintiffs' request for leave to file a Second Amended Complaint at this stage.

However, because this Opinion and corresponding Order serve to resolve Defendants' pending Motions, Plaintiffs may appropriately re-file their motion and again seek the Court's leave to file their proposed Second Amended Complaint if they wish to do so, provided that they do not re-raise claims that the Court has dismissed here with prejudice.

## V.  CONCLUSION

For these reasons, Defendants' First Motion to Dismiss (ECF No. 5) is **DENIED as moot**. Defendants' Second Motion to Dismiss (ECF No. 12) is **GRANTED**. Plaintiffs' Motion to Amend (ECF No. 16) is **DENIED**. An Order follows.


Dated: May 28, 2024                                /s/ Robert B. Kugler
                                                   ROBERT B. KUGLER
                                                   United States District Judge